**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BRIAN A. DAVIS,

     **Plaintiff,**

       v.                        Civil Action No. 11-1433 (JEB)

UNITED STATES SENTENCING
COMMISSION,

     **Defendant.**

## MEMORANDUM OPINION

Congress and the United States Sentencing Commission have engaged in a lengthy and ongoing dialogue about the proper penalties for offenses involving crack and powder cocaine. In 1995, the Commission proposed jettisoning any differential treatment of the two, but Congress expressly rejected this proposal several months later in the passage of Public Law 104-38. Plaintiff Brian Davis, who is serving a 30-year sentence for crack-related crimes, has brought this action requesting the Court to issue a writ of mandamus compelling the Commission to reinstate the 1:1 ratio it proposed in 1995. In moving to dismiss the case, the Commission argues that mandamus cannot be proper here where Public Law 104-38 is not unconstitutional. The Court agrees and will grant the Motion.

### I.    Background

    A.  <u>Statutory Background</u>

Congress passed the Anti-Drug Abuse Act of 1986 as a major volley in the highly publicized "War on Drugs." As part of its mission to "improve enforcement of Federal drug laws," Congress amended the penalties in the Controlled Substances Act for offenses involving

powder and crack cocaine.  See Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, intro., 100 Stat. 3207.  The amendments mandated a five-year minimum sentence for, *inter alia*, distributing 500 grams of powder or 5 grams of crack cocaine, and a ten-year minimum for 5 kilograms of powder or 50 grams of crack, thus establishing a 100:1 sentencing ratio for powder to crack.  See id. § 1002.

In response to growing concerns about the effects of this ratio in the early 1990s, Congress directed the Sentencing Commission to research the policy's impact and submit a report of its findings.  See U.S. Sentencing Commission, Special Report to Congress: Cocaine and Federal Sentencing Policy at iii (1995).  The report, submitted in February 1995, concluded that "[r]esearch and public policy may support somewhat higher penalties for crack versus powder cocaine, but a 100-to-1 quantity ratio cannot be recommended."  Id. at xiv.  On May 1, 1995, consistent with that report, the Commission submitted to Congress proposed amendments to the Sentencing Guidelines that would establish a 1:1 ratio for penalties between crack and powder offenses.

Congress did not agree.  By passing Public Law 104-38, it expressly rejected the Commission's proposed 1:1 ratio.  At the same time, Congress charged the Commission with submitting new recommendations reducing the 100:1 disparity while keeping the sentences imposed for crack cocaine generally higher than those for powder cocaine.  See Act of Oct. 30, 1995, Pub. L. No. 104-38, 109 Stat. 334.  The Commission submitted more Special Reports concerning cocaine sentencing over the ensuing years, each time recommending a reduction in the ratio.  Eventually, in 2010, Congress passed the Fair Sentencing Act, which adjusted the ratio to 18:1.  See Pub. L. 111-220, 124 Stat. 2372.

B. Factual and Procedural Background

In 1993, Plaintiff Brian Davis was convicted of conspiracy to possess with intent to distribute and distribution of crack and powder cocaine, and the trial court imposed a life sentence. See Davis v. U.S. Sent. Comm'n, 716 F.3d 660, 662 (D.C. Cir. 2013). Subsequent amendments to the Sentencing Guidelines lowered base offense levels for crimes involving certain amounts of crack, but not the amount for which Davis was responsible. See id. Regardless, "[i]n 2008, the district court reduced his sentence from life to 360 months based on an unrelated amendment to the Guidelines." Id.

Over the years, Davis has filed assorted motions and suits in an attempt to vacate or lower his sentence, but with no success. For instance, in 2001, the Fifth Circuit affirmed the dismissal of his civil-rights actions and characterized his appeal as "frivolous." Davis v. King, 252 F.3d 1357 at *1 (5th Cir. 2001). Similarly, the D.C. Circuit affirmed a dismissal of his suit "challenging the constitutionality of Congress's perpetuation of the 100:1 sentencing disparity between crack cocaine and powder cocaine." Davis v. U.S. Congress, 101 Fed. Appx. 838 at *1 (D.C. Cir. 2004). The court held that habeas corpus was the exclusive remedy for a federal prisoner bringing a claim that would have a "probabilistic impact" on the length of his incarceration. Id. (citing Chatman-Bey v. Thornburgh, 864 F.2d 804, 809 (D.C. Cir. 1988)).

The current controversy began with the filing of a new Complaint against the Sentencing Commission in August 2011 pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Declaratory Judgment Act. See ECF No. 1. The district court to which the case was initially assigned dismissed it *sua sponte*, holding that under Bivens only money damages were available and that any action for a declaratory judgment

should have been brought as a habeas claim.  See ECF No. 5 (Mem. Op. Sept. 21, 2011).  On appeal, the D.C. Circuit reversed.

The Court of Appeals, overruling its earlier precedent in light of subsequent Supreme Court decisions, held that Davis could bring his equal-protection claim and was not restricted to a habeas proceeding.  See Davis, 716 F.3d at 666.  In so doing, the Court cautioned that "we take no position on whether dismissal for failure to state an equal protection claim might otherwise be proper."  Id.  The Court additionally reversed the district court's conclusion that Davis's Bivens claim was "patently insubstantial," though noting that it was "admittedly flawed . . . and possibly fatally so."  Id. at 667.

Upon remand to this Court, Davis filed a Second Amended Complaint.  See ECF No. 20. This new pleading abjured any reliance on Bivens and instead characterized the action thus: "This is an action in mandamus to compel the United States Sentencing Commission (the 'Commission') to reinstate its 1995 amendments to the Sentencing Guidelines that would have achieved a 1-to-1 sentencing ratio for crack and powder cocaine."  Sec. Am. Compl., ¶ 1.  The Commission has now renewed its Motion to Dismiss.

## II.    Legal Standard

In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v.

Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." The notice-pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and Plaintiffs must thus be given every favorable inference that may be drawn from their allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 556.

### III.    Analysis

In moving to dismiss, the Commission offers three principal arguments: (1) Davis's claim is barred by the doctrine of *res judicata*, given the Court of Appeals' dismissal of his 2002 suit; (2) the discretionary nature of the agency action he seeks means mandamus is not applicable; and (3) the equal-protection challenge to Public Law 104-38 fails to state a claim. As the Court agrees that mandamus is not available here because no equal-protection violation has occurred, it need not consider the first issue.

A.  <u>Mandamus</u>

 "Mandamus is an extraordinary remedy 'reserved for really extraordinary cases,'" <u>In re Bituminous Coal Operators' Ass'n, Inc.</u>, 949 F.2d 1165, 1167 (D.C. Cir. 1991) (quoting <u>Ex parte Fahey</u>, 332 U.S. 258, 260 (1947)), and it "is hardly ever granted."  <u>In re Cheney</u>, 406 F.3d 723, 729 (D.C. Cir. 2005) (<i>en banc</i>).  "Mandamus is available only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff."  <u>Power v. Barnhart</u>, 292 F.3d 781, 784 (D.C. Cir. 2002) (internal quotation marks and citation omitted).  "[A] writ of mandamus will issue 'only where the duty to be performed is ministerial and the obligation to act peremptory, and clearly defined.  The law must not only authorize the demanded action, but require it; the duty must be clear and undisputable.'" <u>13th Reg'l Corp. v. U.S. Dep't of Interior</u>, 654 F.2d 758, 760 (D.C. Cir. 1980) (quoting <u>United States ex rel. McLennan v. Wilbur</u>, 283 U.S. 414, 420 (1931)); <u>Lozada Colon v. U.S. Dep't of State</u>, 170 F.3d 191 (D.C. Cir. 1999).

In this case, Davis asks the Court to compel the Commission to reinstate its proposed 1995 amendments to the Guidelines.  <u>See</u> Sec. Am. Compl., ¶ 1.  He alleges that because Congress's disapproval of those amendments in Public Law 104-38 was unconstitutional on equal-protection grounds, "[t]he Commission has a duty to give effect to these amendments in the Sentencing Guidelines."  <u>Id.</u>, ¶¶ 4-6.  In other words, Davis is asking the Court to find that the Commission has a clear duty to act, even in the face of express Congressional opposition.  Not surprisingly, he offers no authority for this novel proposition, nor can the Court find any.

Although there are other significant impediments to the issuance of mandamus here, even Plaintiff concurs that his only chance of success rests on an invalidation of Public Law 104-38.

Indeed, his Opposition states: "[T]he sole claim that plaintiff Brian A. Davis asserts here is that Public Law 104-38 is unconstitutional." Opp. at 1. The Court thus turns to that question.

B. <u>Public Law 104-38</u>

While Plaintiff spends some time discussing mandamus as a remedy, the illegitimacy of Public Law 104-38 is certainly where his Complaint focuses its fire: "Public Law 104-38 was unconstitutional and invalid because it violated the Fifth Amendment equal protection rights of petitioner . . . ." Sec. Am. Compl., ¶ 4; <u>see also id.</u>, ¶ 74 ("Public Law 104-38 was unconstitutional."); <u>id.</u> at 16 (prayer for relief asks that Court recognize 1995 Guideline Amendments as valid "because Public Law 104-38 was unconstitutional"). As just mentioned, so do his briefs on the Motion. <u>See also</u> Sur-Reply at 1 ("This action challenges Congress's rejection, in Public Law 104-38, of the Commission's 1995 amendments . . . .").

A quick review of the applicable legislation may prove helpful at this point. Under 28 U.S.C. § 994(p), the Sentencing Commission may "submit to Congress amendments to the guidelines . . . [,which] shall take effect . . . [unless] the amendment is . . . disapproved by Act of Congress." That is precisely what happened here. In its 1995 proposed amendments, the Commission recommended that Congress abrogate any difference between penalties mandated for crack-cocaine and powder-cocaine offenses. <u>See</u> Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 60 Fed. Reg. 25,074, 25,077 (May 10, 1995). Congress rejected the proposal in Public Law 104-38, which is titled in part "An Act to disapprove of amendments to the Federal Sentencing Guidelines relating to lowering of crack sentences . . . ." It then states in Section 1, "In accordance with section 994(p) of title 28, United States Code, amendments numbered 5 and 18 of the 'Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary,' submitted by the United States Sentencing

Commission to Congress on May 1, 1995, are hereby disapproved and shall not take effect." The Act, nonetheless, also recommends that the Sentencing Commission continue to submit recommendations to Congress about cocaine sentencing, subject to certain provisions, including that "the sentence imposed for trafficking in a quantity of crack cocaine should generally exceed the sentence imposed for trafficking in a like quantity of powder cocaine." Id., § 2(a)(1)(A).

Was Congress's rejection unconstitutional? As background, the D.C. Circuit has explained that the original 100:1 powder-crack ratio was not subject to strict scrutiny under the equal-protection clause because Congress had no discriminatory purpose in enacting it. See United States v. Johnson, 40 F.3d 436, 439 (D.C. Cir. 1994). "It is not enough that a law impacts members of different races differently in effect – it must have been passed at least in part with that purpose." Id. The Court of Appeals, furthermore, previously held that "the disparate treatment of crack and powder cocaine easily survives . . . rational-basis review." United States v. Thompson, 27 F.3d 671, 678 (D.C. Cir. 1994). Plaintiff is thus left with the claim that the rejection of the 1995 amendments in Public Law 104-38 was by itself unconstitutional.

The D.C. Circuit, however, has already decided otherwise. In United States v. Pickett, 475 F.3d 1347 (D.C. Cir. 2007), the Court held:

> Pickett also contended, as he does on appeal, that Congress engaged in unconstitutional discrimination in passing the "Disapproval Act," Pub. L. No. 104-38, § 1, 109 Stat. 334 (Oct. 30, 1995), which rejected the Sentencing Commission's proposed amendment to eliminate the crack/powder cocaine disparity. His arguments are similar to those the defendant made in United States v. Johnson, 40 F.3d 436 (D.C. Cir. 1994), and we reject them again. Now, as then, "scattered pieces of legislative history are quite inadequate to serve to attribute a discriminatory purpose to the Congress." Id. at 440. Just as Congress had race-neutral reasons for adopting a 100-to-1 ratio in the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207, see Johnson, 40 F.3d at 441, it had race-neutral reasons for declining to adopt the 1-to-1 ratio the Sentencing Commission proposed.

Id. at 1348 n.1. Similarly, United States v. Holton, 116 F.3d 1536 (D.C. Cir. 1997), addressed the equal-protection claim that minorities are "disproportionately impacted by the higher mandatory minimum sentences applied for crimes involving crack cocaine than for crimes involving powder cocaine." Id. at 1548. In rejecting the appellant's argument, the Court of Appeals explained that "[t]he opinions of the Sentencing Commission [presumably in its recommendations for a 1:1 ratio] and scientific journals do not provide the requisite proof that Congress was motivated by any impermissible considerations. Moreover, this circuit recently reaffirmed its conclusion that there is a race-neutral explanation for the sentencing disparity." Id. (citations omitted).

Circuit courts elsewhere have also found no constitutional violation in Congress's refusal to enact the 1995 proposed amendments. See, e.g., United States v. Mormon, 105 F.3d 656, at *3-4 (5th Cir. 1996) (rejecting argument that "Congress' failure to adopt the Commission's recommendations evinces Congress' intent to discriminate against African-Americans"); United States v. Teague, 93 F.3d 81, 85 (2d Cir. 1996) (no evidence that Congressional rejection of amendments was "at least in part because of, not merely in spite of, its adverse effects upon blacks"; nor was Congress's decision unconstitutional for lack of rational basis) (citation and internal quotation marks omitted); United States v. Lewis, 90 F.3d 302, 305 (8th Cir. 1996) (noting in relation to Pub. L. 104-38 that "[d]isparate impact is not enough to make a law unconstitutional under the equal-protection component of the Due Process Clause of the Fifth Amendment. Discriminatory purpose is required, and no such purpose has been proved."); United States v. Jackson, 84 F.3d 1154, 1161 (9th Cir. 1996) ("We do not agree that the Commission's report, or Congress's decision to reject it, affects the precedential value of our ruling that Congress had a rational basis for the 100:1 ratio.").

The only "authority" that Plaintiff can muster is not really an authority at all. In United States v. Then, 56 F.3d 464 (2d Cir. 1995), the Second Circuit rejected an equal-protection claim based on the powder-crack disparity. At the time of the issuing of its opinion, the Commission had recommended the 1:1 ratio, but Congress had not yet passed Public Law 104-38. Judge Guido Calabresi in a concurrence stated that if Congress were to invalidate the recommendation (as it ultimately did), "subsequent equal protection challenges based on claims of discriminatory purpose might well lie." Id. at 468 (J. Calabresi, concurring). This notion, however, was expressly disavowed by the majority: "[W]e decline to accept the invitation by the concurrence to notify Congress that if it does not adopt the recommendation of the Sentencing Commission, this Court in the future might invalidate the sentencing ratio as unconstitutional." Id. at 466. Indeed, in Teague the Second Circuit itself failed to fulfill Judge Calabresi's prophecy after Congress did reject the 1995 amendments. See 93 F.3d at 85.

Because Congress's refusal to enact the Commission's proposed 1:1 ratio did not constitute an unconstitutional violation of equal protection, Plaintiff is not entitled to the relief he seeks.

## IV.    Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss. A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  April 11, 2014